UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| ASHLEY N. BURDETTE, | ) |
|     Plaintiff, | ) Case No. 1:22-CV-154 (Kleeh) |
| v. | ) |
| ALDI INC. (PENNSYLVANIA), | ) ELECTRONICALLY FILED |
|     Defendant. | ) |

**DEFENDANT'S BRIEF IN SUPPORT OF**
**MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Plaintiff's Amended Complaint (ECF 11) fails to cure the pleading deficiencies of her original Complaint as detailed in Defendant's Motion to Dismiss and supporting brief (ECF 5 & 6). Therefore, for the reasons set forth herein, Plaintiff has again failed to state a claim against Defendant ALDI Inc. (Pennsylvania) ("ALDI" or "Defendant"), and her Amended Complaint should be dismissed with prejudice.

**FACTUAL BACKGROUND**

Plaintiff alleges she was employed by Defendant as a store associate beginning July 25, 2016 and promoted to lead store associate in January 2020. ECF 11 ¶¶ 3 & 8. She further alleges that, in August 2021, she suffered a knee injury while at work. *Id.*, ¶ 9. Plaintiff alleges she was given work restrictions, and that "[u]pon learning of [her] work restrictions," Defendant adjusted her work assignment to "curb side and truck duty for the majority of her shifts." *Id.*, ¶¶ 12-13. Following an additional injury, Plaintiff asserts that she was "order[ed] to be off work," and "Defendant was informed of this directive." *Id.*, ¶ 15. When her doctor subsequently permitted her to return to work, on light duty performing sedentary work with the use of a cane, Plaintiff alleges that "she was not placed on the schedule." *Id.*, ¶ 17.

Plaintiff asserts that she "received a letter from ALDI approving her requested accommodations," but that she was subsequently informed the letter was an error. *Id.*, ¶ 19. After additional interactive conversations about an available accommodation, Plaintiff states that she "received a letter from Defendant ALDI that there were no accommodations available," and as a result, she was terminated. *Id.*, ¶ 22. Nowhere in Plaintiff's Amended Complaint does she allege that she was capable of performing all the essential functions of her job with or without an accommodation; rather, she claims she would have been able to perform just one of her job duties – working the cash register. *Id.*, ¶ 37.

Following her termination, Plaintiff filed suit in Monongalia County, West Virginia, against ALDI and former Defendant Peter McGinley. The originally named Defendants subsequently removed this matter to the United States District Court for the Northern District of West Virginia (ECF 1) and filed a Motion to Dismiss Plaintiff's Complaint under Fed. R. Civ. P. 12(b)(6). *See* ECF 5 & 6. On or about January 2, 2023, Plaintiff filed her Response to Defendants' (ALDI and McGinley) Motion to Dismiss wherein she indicated an intention to file, but did not attach, an amended complaint removing McGinley as a named Defendant and rectifying her improper stand-alone punitive damages cause of action. *See* ECF 9. Defendants ALDI and McGinley filed their Reply to Plaintiff's Response on or about January 9, 2023. *See* ECF 10.

On January 10, 2023, Plaintiff filed an Amended Complaint removing McGinley as a named Defendant and incorporating her demand for punitive damages into her prayer for relief. *See* ECF 11. Plaintiff's Amended Complaint did not, however, rectify any of the remaining substantive issues set forth in Defendants' first Motion to Dismiss and supporting brief. *See* ECF

2

5 & 6.  Accordingly, ALDI now moves to dismiss Plaintiff's Amended Complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(6).

## STANDARD OF REVIEW

Under Fed. R. Civ. P. 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  When challenged pursuant to Fed. R. Civ. P. 12(b)(6), a pleading's sufficiency must be considered as follows:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic v. Twombly,* 550 U.S. 544, 127 S. Ct. 1955) (internal citations omitted).

In reviewing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court is not bound by legally conclusory statements, but must accept all factual allegations as true, and draw all reasonable conclusions in favor of the non-moving party.  *Erikson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 2200 (2007); *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

In considering a motion to dismiss specific to an amended complaint, dismissal with prejudice is warranted where the plaintiff was "advised with specificity of the legal deficiencies" in the initial complaint and failed to cure the same in an amended pleading.  *Harvey v. Cable News Network, Inc*., 48 F.4th 257, 269 (4th Cir. 2022); *see Watkins v. Wash. Post*, 2018 WL 805394, at *8 (D. Md. Feb. 9, 2018) (granting a motion to dismiss with prejudice where defendants, in their motion to dismiss the complaint, identified legal deficiencies as to plaintiff's claims that plaintiff failed to cure in the amended complaint).  Moreover, given the procedural

posture of this case, any further request to amend the complaint should be denied as futile due to Plaintiff's repeated failure to cure the now twice identified deficiencies. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (noting that reasons to deny leave to amend include, *inter alia*, "repeated failure to cure deficiencies by amendments previously allowed" and "futility of amendment").

## ARGUMENT

I. **Plaintiff's Claims for Disability Discrimination (Count I) And Failure To Accommodate (Count II) Should Be Dismissed.**

   A. **Plaintiff's disability discrimination claim should be dismissed because she has not pled that she is a Qualified Individual with a Disability or any facts to support an inference that she was discriminated against based on a disability.**

The West Virginia Human Rights Act ("WVHRA") provides that it shall be an unlawful discriminatory practice "[f]or any employer to discriminate against an individual with respect to compensation, hire, tenure, terms, conditions or privileges of employment if the individual is able and competent to perform the services required even if such individual is . . . disabled." W. Va. Code § 5-11-9(1). To plead a *prima facie* case of disability discrimination under the WVHRA, Plaintiff must assert that (1) she meets the definition of "disabled" within the law's meaning; (2) she is a "qualified disabled person"; and (3) she was discharged from her job because of her disability. *Hosaflook v. Consolidation Coal Co.*, 497 S.E.2d 174, 178-79 (W.Va. 1997).

Plaintiff has not pled that she is a Qualified Individual with a Disability under the WVHRA. A "Qualified Individual with a Disability" is defined as one "who is able and competent, with reasonable accommodation, to perform the essential functions of the job." W. Va. Code § 77-1-4.2. It is well settled that "an individual who has not been released to work by her doctor is not a Qualified Individual with a Disability." *Kitchen v. Summers Continuous Care*

4

*Center, LLC*, 552 F. Supp.2d 589, 594 (W.Va. 2008).  Here, Plaintiff alleges that "she was ordered to be off work" and that she could only return to "light duty" if it was sedentary and she could use a cane.  ECF 11, ¶¶ 15-16, 19, 20.  Plaintiff does not plead that she was ever released to return to work in her lead store associate role, with or without an accommodation, and, therefore, she is not a qualified individual with a disability.  *See Crabill v. Charlotte Mecklenburg Bd. of Educ.,* 423 F. App'x 314, 323 (4th Cir. 2011) ("[T]he ADA does not require an employer to reallocate essential job functions or assign an employee permanent light duty.").

Likewise, Plaintiff does not allege that she was "able and competent, with reasonable accommodation, to perform the essential functions of *her* job" as is required by the WVHRA. *Coffman v. W. Va. Board of Regents*, 182 W.Va. 73, 386 S.E.2d 1 (1988); *see also* W. Va. C.S.R. § 77–1–4.4.2.  Rather, she alleges she "would have been able to complete [unidentified] required job duties with her requested accommodations of sedentary work, use of her cane and time off" but then identifies only one essential function of her job as a lead store associate that she could have performed – working the cash register.  ECF 11, ¶¶ 16, 20, 37.  Because Plaintiff has not pled that she was able to perform all of the essential functions of her job as a lead store associate, with or without an accommodation, she has failed to state a claim under the WVHRA.

Plaintiff has also offered no facts to support that she was discharged because of her disability.  West Virginia law is clear that an employer can fire an employee who is unable to perform the essential functions of her job with or without an accommodation.  *See Williams v. Charleston Area Medical Center*, 592 S.E.2d 794, 799-800 (W.Va. 2003) (opining that "[t]he 'able and competent' requirement means that an employer has the right … to fire employees who are unable to perform a job because either they are generally unqualified or they have a [disability] that impedes job performance, subject to the 'reasonable accommodation'

5

requirement.")  Plaintiff's allegations establish that she was terminated after nearly eight months of leave because she was not able to perform the essential functions of her job, with or without an accommodation.  ECF 11, ¶¶ 14-23.  Notably, Plaintiff does not allege that she would ever be able to perform such functions.  *Id.*  Put simply, she provides no factual allegations from which one could conclude that her separation was based on her alleged disability.  *Id*.  Without any basis, Plaintiff merely concludes that, on "information and belief," the decision to terminate her must have been "based in part on her disabilities."  *Id.*, ¶ 31.

Moreover, Plaintiff's speculation that her termination must have been "based in part on her disabilities" is insufficient to plead a *prima facie* case of disability discrimination.  W. Va. Code Ann. § 5-11-9(c).  Under the WVHRA, Plaintiff is required to (1) plead that, "but for" her protected status, she would not have been terminated or (2) otherwise plead facts giving rise to an inference that her termination was the result of illegal discrimination.  *Judy v. Eastern West Virginia Community and Technical College,* 874 S.E.2d 285 (W.Va. 2022).  Plaintiff, in her Amended Complaint, has done neither.  Instead, she concedes she has no facts, aside from her own "information and belief" to aver that the decision to terminate her was based on "her disabilities" and, even then, she does not claim that her termination was due to disability discrimination.  ECF 11, ¶ 31.  Accordingly, Plaintiff has again failed to state a claim for disability discrimination under the WVHRA.  *See Judy,* 874 S.E. 2d at 291 (requiring the petitioner to have pled facts giving rise to an inference of discrimination to successfully state a discrimination claim under the WVHRA).

Because Plaintiff has not pled that she is a Qualified Individual with a Disability or any facts suggesting Defendant discriminated against her based on a disability, she has failed to state a claim for disability discrimination under the WVHRA.  Moreover, it is clear that any further

amendment would be futile given Plaintiff's failure to cure the deficiencies in her Amended Complaint that clearly were identified in the original Motion to Dismiss.  *See* ECF 5 & 6.

>    **B.    Plaintiff has failed to state a claim for failure to accommodate under the WVHRA because Defendant's duty to engage in the interactive process was not triggered, and the requested accommodations would not have allowed her to perform the essential functions of her job.**

Plaintiff's claim that ALDI failed to provide her with an accommodation to allow her to perform the essential functions of her job as a lead store associate fails as a matter of law.  "To state a claim for breach of the duty of reasonable accommodation under the [WVHRA], a plaintiff must allege the following: (1) the plaintiff is a qualified person with a disability; (2) the employer was aware of the plaintiff's disability; (3) the plaintiff required an accommodation in order to perform the essential functions of a job; (4) a reasonable accommodation existed that met the plaintiff's needs; (5) the employer knew or should have known of the plaintiff's need and of the accommodation; and (6) the employer failed to provide the accommodation." Syl. Pt. 2, *Skaggs v. Elk Run Coal Co., Inc.*, 198 W.Va. 51, 479 S.E.2d 561 (1996). "Under the [WVHRA], reasonable accommodation means reasonable modifications or adjustments to be determined on a case-by-case basis which are designed as attempts to enable an individual with a disability to be hired or to remain in the position for which he or she was hired." *Id*.

As an initial matter, Plaintiff did not plead that she was a Qualified Individual with a Disability, thus triggering a duty by Defendant to engage in the interactive accommodation process.  An employer's duty to engage in the interactive process is not triggered until Plaintiff had the ability to perform the essential functions of her job with or without a reasonable accommodation.  *Kitchen,* 552 F. Supp. 2d at 595.  As noted above, Plaintiff's Amended Complaint provides no indication that she was released by her doctor to perform the essential functions of her role as a lead store associate.  After eight months of leave, Plaintiff alleges that

7

she could return to "light duty" or sedentary work but only using a cane. ECF 11, ¶¶ 14-20. Further, Plaintiff's allegation that she once "finished her shift at the register" in a wheelchair does not support her claim. *Id.,* ¶ 14. That Plaintiff completed a portion of one shift from the confines of a wheelchair, does not establish that she indefinitely could perform all of the essential functions of her lead store associate role with the accommodation of remaining stationary as a cashier – she could not. Instead, Plaintiff concludes that, upon information and belief, "Defendant could reasonably provide said accommodations" – not that these accommodations would have allowed her to perform her job. *Id.,* ¶ 36. Plaintiff does not and cannot allege that she could perform the essential functions of her lead store associate position with these restrictions – she could not. Thus, because Plaintiff fails to plead that she was able to perform the essential functions of her job with or without a reasonable accommodation, Defendant's duty to engage in a dialogue regarding the accommodation was not triggered and she cannot state a claim for failure to accommodate. *See Kitchen*, 552 F. Supp. 2d at 595.

Accordingly, Plaintiff has failed to state a claim for failure to accommodate under the WVHRA because she has not pled and cannot plead that her requested accommodations would allow her to perform the essential functions of her job. Moreover, it is clear that any further amendment would be futile, given her failure to cure the previously identified deficiencies in her Amended Complaint.

II.     **Plaintiff's Claim For Retaliation (Count III) Should Be Dismissed.**

Plaintiff's Amended Complaint fails to allege sufficient facts to sustain a cause of action for Retaliatory Discharge under the West Virginia Worker's Compensation Act ("WVWC"). To establish such a claim, Plaintiff must allege that "(1) an on-the-job injury was sustained; (2) proceedings were instituted under the Workers' Compensation Act, W.Va. Code, 23–1–1, *et seq.;* and (3) the filing of a workers' compensation claim was a significant factor in the

8

employer's decision to discharge or otherwise discriminate against the employee." *Powell v. Wyoming Cablevision, Inc.*, 184 W. Va. 700, 704 (1991).

Here, Plaintiff's Amended Complaint fails to allege that the filing of her worker's compensation claim was a "significant factor" in the decision to terminate her. *See* ECF 11, ¶ 40-46. In fact, Plaintiff's only basis for her retaliatory discharge claim is that "Defendant was aware [she] was filing for and/or collecting West Virginia Worker's Compensation benefits," and that she did not "commit any separate dischargeable offense." ECF 11, ¶¶ 43, 44. However, a review of the factual averments in Plaintiff's Amended Complaint supports that Plaintiff was terminated because she could not perform the essential functions of her lead store associate position, with or without a reasonable accommodation. *See id*. Further, Plaintiff's Amended Complaint makes no mention of her worker's compensation claim until the section where she recites the elements of the cause of action. *See id*. ¶¶ 3-25, 40-46. Additionally, Plaintiff does not allege *when* she filed for benefits, only that it occurred "[a]t all times relevant herein," and that her filing "proceeded" [sic] her discharge. *See id*. ¶¶ 41, 44. Finally, Plaintiff does not make any allegations pertaining to harassment following her submission of her claim or proffer any facts that would support an inference of retaliation. There are simply no facts to support retaliatory discharge other than potentially mere proximity of time, which cannot even be derived from the fact of the Amended Complaint.

Accordingly, Plaintiff has failed to state a claim for retaliatory discharge under the WVWC because she has not pled and cannot plead that her seeking and/or obtaining worker's compensation benefits was a "significant factor" in the decision to terminate her.

### III. Plaintiff's Claim For Violation Of The Family And Medical Leave Act (Count IV) Should Be Dismissed.

Count IV fails to establish a *prima facie* case of FMLA interference. To establish FMLA interference, an employee must demonstrate that: (1) she is entitled to an FMLA benefit; (2) her employer interfered with the provision of that benefit; and (3) that interference caused harm. *See Ragsdale v. Wolverine Worldwide, Inc.*, 535 U.S. 81, 89, 122 S. Ct. 1155 (2002) (citing 29 U.S.C. § 2617(a)(1)).

Here, Plaintiff does not allege she was eligible for FMLA. She does not articulate that she had a serious health condition or any specific facts to support that she communicated her request for leave to Defendant. Rather, Count IV is nothing more than the following, most of which are legal conclusions:

- Plaintiff, having medical conditions, as described above, necessitated her taking time off of work. ECF 11, ¶ 48

- Defendant had a legal obligation to inform Plaintiff of and determine Plaintiff's FMLA eligibility. If eligible, to offer Plaintiff FMLA leave when she needed time off work for a medical condition. However, Defendant failed to properly offer Plaintiff leave and then retaliated against her for needing time off work for medical issues. *Id.* ¶ 49.

- Defendant unlawfully interfered with, restrained, and/or denied Plaintiff Burdette the exercise of her FMLA rights. *Id.* ¶ 50.

- As a direct and proximate result of the actions and inactions of Defendant as herein alleged, Plaintiff was caused to suffer damages and losses as hereinafter set forth. *Id.* ¶ 51.

Additionally, and prior to Count IV, Plaintiff merely states that she "tried to apply for different types of leave as the leave she was previously on was running out. She filed for FMLA, as Defendant would not accommodate to the restrictions her doctor recommended. She was not given additional leave." *Id.*, ¶ 18. This statement does not articulate how she applied for or why she was "not given additional leave," and fails to even suggest that it was because of Defendant.

10

There are no other FMLA-related allegations in the Amended Complaint. Despite her current claim, Plaintiff appears to concede that she was afforded time off from November 17, 2021 through her separation on July 1, 2022. *Id.*, ¶¶ 14-23.

The Amended Complaint includes no facts plausibly alleging that Plaintiff was FMLA eligible; that Defendant failed, if at all, to properly offer her FMLA leave; or that Plaintiff was prejudiced because of any purported failure or action by Defendant. Even generously construed, Plaintiff has failed to state a claim for interference under the FMLA.

**IV.** **Plaintiff's Claim For Wrongful Termination (Count V) Should Be Dismissed Because It Is Preempted By Her WVHRA Claim.**

Under West Virginia law, "an employment unaffected by contractual or statutory provisions to the contrary, may be terminated, with or without cause, at the will of either party to the contract of employment." *Wright v. Standard Ultramarine & Color Co.*, 141 W.Va. 368, 90 S.E.2d 459, 468 (1955). The West Virginia Supreme Court of Appeals carved out a limited exception to this general rule in *Harless v. First Nat'l Bank*, 162 W.Va. 116, 246 S.E.2d 270, 271 (1978). In *Harless*, the Court held that "where employer's motivation for discharge is to contravene some substantial public policy principle, then employer may be liable to employee for damages occasioned by this discharge." In *Feliciano v. 7–Eleven, Inc.*, 210 W.Va. 740, 559 S.E.2d 713, 723 (2001), the Court held the following elements should guide a court's analysis of whether an employee has successfully presented a wrongful discharge claim in contravention of a substantial public policy: (1) whether clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in common law; (2) whether dismissing employees under circumstances like those involved in plaintiff's dismissal would jeopardize the public policy; (3) whether dismissal was motivated by conduct related to the

11

public policy; and (4) whether employer lacked overriding legitimate business justification for dismissal.

Here, Plaintiff's Amended Complaint does not identify any substantial public policy that would animate her claim. In fact, Plaintiff provides no separate or distinct legal entitlement to relief under this claim; instead, she cites to "West Virginia law" generally rather than identifying any authority under which this cause of action could accrue. Indeed, West Virginia district courts have consistently interpreted the law as preventing a plaintiff from maintaining both a *Harless* common law action and a WVHRA claim based on the same conduct. *See Burgess v. Gateway Comm'ns, Inc.-WOWK TV*, 984 F. Supp. 980, 983 (S.D. W. Va. 1997) (Haden, J.) ("A victim of unlawful discrimination is limited to the remedy afforded [her] under the [WVHRA]"); *Knox v. Wheeling-Pittsburgh Steel Corp.*, 899 F. Supp. 1529, 1535-36 (N.D. W. Va. 1995) ("It is a well-established principle that federal and state anti-discrimination laws, such as Title VII and the [WVHRA], preempt *Harless*-type, tort-based actions for discriminatory treatment in the workplace."); *Taylor v. City Nat'l Bank*, 642 F. Supp. 989, 998 (S.D.W. Va. 1986) (Haden, J.) ("This Court has previously decided that a party may not bring a *Harless*-type, tort-based action to gain redress for violations of the [WVHRA]"). "[A] *Harless* cause of action is superfluous when a public policy is enforceable by a statutory cause of action." *Jackson v. Vaughn*, No. 1:15CV128, 2015 WL 6394510, at *3 (N.D.W. Va. Oct. 22, 2015) (Keeley, J.).

Plaintiff's Amended Complaint sets forth the same precluded *Harless* claim such that Plaintiff's Count V must be dismissed as a matter of law. For the same reasons, any further attempt at amendment would be futile.

V.     **Plaintiff's Claim For The Tort Of Outrage (Count VI) Should Be Dismissed.**

Under West Virginia law, a claim for the intentional infliction of emotional distress ("IIED") is also known as the "tort of outrage." *Travis v. Alcorn Laboratories, Inc.*, 504 S.E. 2d

419, 424 (W.Va. 1998). The West Virginia Supreme Court has defined IIED as "[o]ne who by extreme or outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for bodily harm." *Greenfield v. Schmidt Baking Co.*, 199 W. Va. 447, 461 (1997).

In order to sustain such a claim, a plaintiff must establish the following elements:

> (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

*Travis*, 504 S.E. at 425 (adopting the test suggested in *Hines v. Hills Dept. Stores, Inc.*, 193 W.Va. 91, 98, 454 S.E. 2d 145, 148 (1974)).

### A. Plaintiff has not alleged "outrageous" conduct.

The critical inquiry when evaluating conduct under the first element of the foregoing test is "[w]hether conduct may reasonably be considered outrageous." *Travis*, 504 S.E. 2d at 426-28. To be considered "outrageous," conduct must be "so extreme in degree, as to go beyond all possible bounds of decency, as to be regarded as atrocious, and utterly intolerable in a civilized community." *Hines*, 193 W.Va. at 98, 454 S.E. 2d at 392 (quoting Restatement (Second) of Torts § 46 at 71-73 (1965)). The conduct must extend beyond mere "insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *See Tanner v. Rite Aid of West Virginia, Inc.*, 194 W.Va. 643, 650-51 (1995); *see also Travis*, 504 S.E. 2d at 426.

The Supreme Court of West Virginia has concluded that "the fact that Plaintiff's employment was terminated" is **not sufficient** to plead an IIED claim. *See Gibson v. Shentel*

13

*Cable Co.*, No. 12-0132, 2013 WL 500202, at *5 (W.Va., Feb. 11, 2013) ("The fact that Plaintiff's employment was terminated is simply not actionable under [an IIED]").

In *Roth v. DeFeliceCare, Inc.,* a rare case in which the outrageousness threshold was overcome, the plaintiff alleged she observed her supervisor and another individual in a sexually compromising position. 226 W.Va. 214, 700 S.E. 2d 183 (2010). Immediately following that encounter, the supervisor directed plaintiff to "forget what she saw" and threatened her with the loss of her professional license if she did not. *Id*. Within a week of that encounter, plaintiff's supervisor terminated her employment because "he did not like the way she dressed and he did not like the style[/]color of her hair." *Id*. at 188. The Court found that because of the closeness in proximity to plaintiff's observations and her termination, there were sufficient allegations to support her IIED claim. *Id*. at 194-95.

Here, Plaintiff has not pled any facts to establish or even suggest Defendant's conduct was "outrageous" as a matter of law. As the basis for her IIED claim, Plaintiff asserts that she was "given contradictory information from Defendant," that "she believes her friend Monica Zinn was told to withhold information from her," and that "Plaintiff's access to a place where she believed she was employed was restricted when Defendant required her to turn in her store keys." ECF 11, ¶ 57.

In comparing Plaintiff's allegations to those in *Roth*, it is clear that Plaintiff's Amended Complaint fails to state a plausible claim for sufficiently "outrageous" conduct. Nothing about the circumstances surrounding Plaintiff's termination suggest "that [the] manner of effecting the discharge was outrageous" or that the emotional damages she alleges arise from anything other than the mere fact that she was discharged. *Roth*, 700 S.E. 2d at 194.

Moreover, the Court is free to disregard the conclusory statement she provides at Paragraph 59 of her Amended Complaint (providing that Defendant's actions were done "in an outrageous manner . . . so extreme as to be intolerable in a civilized society") as its lacks any factual support.  ECF 11, ⁋ 59; *see Edwards*, 178 F. 3d at 244 (providing that a court ruling on a Rule 12(b)(6) motion need not accept as true any legal conclusions contained in the complaint).

Put simply, even if this Court were to accept as true the allegations in Plaintiff's Amended Complaint, they simply do not state a claim for IIED under West Virginia law.

**B.    Plaintiff has not sufficiently alleged the element of severe emotional distress.**

Plaintiff's IIED claim also fails because she has not alleged the requisite severe emotional distress.  Because the basis for an IIED claim is emotional distress, "such emotional distress must not only be severe, but must manifest distinct psychological or mental patterns that are commonly recognized by experts . . ."  *Courtney v. Courtney*, 190 W. Va. 126, 130, 437 S.E. 2d 436, 440 (1993).  The emotional distress must be an "integral part of the cause of action," rather than a mere ancillary damage component.  *Id*.

Notably, Plaintiff's Amended Complaint does not actually mention the phrase "emotional distress" anywhere.  *See* ECF 11.  In fact, Plaintiff singularly alleges that she is "attending therapy and taking medications for her mental health after her workplace injury, caused by the acts and/or omissions of Defendant."  *Id.*, ⁋ 58.  However, according to Plaintiff's own timeline, she was first injured in August of 2021–months prior to any alleged discrimination, retaliation, failure to accommodate, etc.  *Id*., ⁋ 9.

As pled, this chain of events contradicts Plaintiff's conclusion that her mental health issues were caused by Defendant's allegedly outrageous actions.  Plaintiff admits she began therapy and medications prior to any alleged discriminatory conduct.  Given this, it simply isn't plausible to conclude that she suffered severe emotional distress as a result of Defendant's

purportedly unlawful conduct. Absent more, the mere mention of therapy and medication accompanied by conclusory language that the Court need not accept as true is not sufficient to state an IIED claim. Accordingly, Count VI should be dismissed. To this end, it is clear that any further amendment would be futile given Plaintiff's failure to cure the deficiencies previously identified by Defendant in her Amended Complaint.

## CONCLUSION

Respectfully, Plaintiff has failed to plead sufficient facts to maintain her Amended Complaint against Defendant. For the reasons set forth herein, Defendant requests that Plaintiff's Amended Complaint be dismissed with prejudice.

Respectfully submitted,

/s/ *Erin J. McLaughlin*
Erin J. McLaughlin (WV 10464)
erin.mclaughlin@bipc.com

BUCHANAN INGERSOLL & ROONEY LLP
501 Grant Street, Suite 200
Pittsburgh, PA  15219-1410
Telephone: 412-562-8800
Fax:  412-562-1041

*Attorney for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of January 2023, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Karl Kolenich, Esquire
karl@klielawoffices.com
Klie Law Offices, PLLC
21 E. Main Street, Suite 160
Buckhannon, WV 26201

/s/ *Erin J. McLaughlin*
Erin J. McLaughlin
erin.mclaughlin@bipc.com

Buchanan Ingersoll & Rooney LLP
Union Trust Building
501 Grant Street, Suite 200
Pittsburgh, Pennsylvania 15219
Telephone: 412-562-8800